## IN RE APPLICATION OF BELL.

[Cite as *In re Application of Bell,* 112 Ohio St.3d 530, 2007-Ohio-610.]

(No. 2006–1623—Submitted November 15, 2006—Decided February 28, 2007.)

**Per Curiam.**

{¶ 1} The applicant, Rebecca J. Bell, graduated from law school in May 2002. She applied to take the July 2002 bar examination, and in June 2002, the Toledo Bar Admissions Committee approved her character and fitness. The applicant took but did not receive a passing score on the July 2002 bar exam, and after her character and fitness was approved a second time, she did not pass the February 2003 bar examination.

{¶ 2} In her May 8, 2003 reapplication to take the July 2003 bar exam, the applicant gave a new answer to a standard question: "Do you currently have any * * * condition or impairment * * * that in any way affects, or if left untreated might affect, your ability to practice law in a competent and professional manner?" The applicant this time divulged that she was under treatment for posttraumatic stress disorder ("PTSD"), adding that she did not anticipate that the condition would compromise her ability to practice law. Because of this answer, the bar admissions committee revisited the applicant's character and fitness, including a request that the applicant provide medical records documenting her condition. The applicant supplied these records. In a July 7, 2003 cover letter to these records, the applicant's therapist, whom she had been seeing since March 2003, reported that the applicant's PTSD "does not compromise her ability

to study for and complete her bar exam, or go on to find employment in her chosen field."

{¶ 3} After further proceedings and deliberation in September and October 2003, seven members of the bar admissions committee disapproved the applicant's fitness qualifications, finding that she suffered from a psychological disorder that could "affect the applicant's ability to practice law in a competent and professional manner." The applicant appealed the committee's disapproval recommendation. On August 26, 2004, a panel of the Board of Commissioners on Character and Fitness heard the cause.

{¶ 4} At the panel hearing, Dr. Deborah Gould, M.D., a board-certified psychiatrist who had examined the applicant on June 4, 2004, testified that the applicant suffered from "adjustment disorder with mixed anxiety and depressed mood." Dr. Gould diagnosed the applicant's mild depression as chronic—lasting six months or more—and explained that the character-and-fitness review process was currently the precipitating event for the applicant's condition. Dr. Gould also reported that, to a reasonable degree of medical certainty, the applicant's psychological condition did not preclude her from practicing law.

{¶ 5} In offering this assessment, Dr. Gould acknowledged that the applicant had also been in therapy since February 2002 for PTSD, the condition having resulted from an event during December 2001 that the applicant claims to have been life-threatening. Dr. Gould explained that the symptoms of PTSD normally resolve once a patient has worked through the traumatic event and its significance in therapy. According to Dr. Gould, the applicant had made significant progress in this recovery, as evidenced by the steady progression in the remission of her symptoms.

{¶ 6} In fact, Dr. Gould saw no lingering symptoms of PTSD during her examination, and she considered the applicant's overall prognosis to be good. Dr. Gould further advised that the daily stresses of a law practice would likely not cause the applicant to react in an untoward manner. On the other hand, after reading the June 2003 treatment notes of the applicant's treating psychologist, Dr. Gould questioned how that psychologist could have reported in July 2003, as the psychologist did for the bar committee's review, an optimistic opinion of the applicant's fitness to practice law.

{¶ 7} The chairman of the Toledo Bar Association's bar admissions committee testified about the applicant's most recent interview with an association panel. He reported that the applicant had at times presented herself as an intelligent and articulate candidate, but that she had also exhibited mood swings ranging from angry to vituperative and from depressed to buoyant. During this testimony, the chairman also mentioned the applicant's advocacy group and website devoted to preventing traumatic incidents similar to the episode she claims to

have suffered. Finally, the chairman recounted his conversation with the applicant when he called to tell her of the committee's disapproval and suggest that she withdraw her application until she has had a chance to complete additional therapy for her condition. The applicant "basically went off," he said, describing the way she had screamed a five-minute irrational response that included name-calling. Because of these irregularities, the chairman continued, the committee could not conclude that the applicant currently possesses the requisite fitness to practice law.

{¶ 8} The applicant also testified before the panel, relating that she taught behaviorally challenged children in February 2002 as a substitute teacher. Since then, the applicant has taught as a substitute for periods ranging from a few days to eight weeks, and she has received letters of praise for her work. When describing her teaching experiences to the panel members, the applicant's demeanor was collected and forthright, and she responded to questions calmly. When the panel inquired further about her psychological disorder, its genesis, and the repercussions, however, the panel noted that the applicant's demeanor changed dramatically. She suddenly became emotionally charged and agitated, and her reaction appeared to the panel to be uncontrollable.

{¶ 9} Unconvinced of the applicant's psychological fitness to practice law, the panel asked her to submit to further medical evaluation. The applicant and her counsel at that time did not object to the proposed examination by another psychiatrist or a psychologist. The panel recessed the hearing pending receipt of the additional psychological report.

{¶ 10} On December 7, 2004, however, the applicant wrote to her counsel and counsel for the Supreme Court Office of Bar Admissions, which acts on behalf of the character and fitness board. Her letter advised both counsel that she would not sign a proposed release because it did not sufficiently protect the confidentiality of her medical information. Bar admissions counsel replied on February 7, 2005, and to allay the applicant's concerns, sent a release that specifically incorporated confidentiality provisions applicable under Gov.Bar R. I. The applicant did not sign the new release.

{¶ 11} On April 1, 2005, the applicant's counsel moved to withdraw from representation. On April 15, 2005, the applicant sent to the secretary of the character and fitness board a bizarre and inappropriate postcard that manifested the applicant's lack of any understanding as to why the character and fitness board had concerns about her fitness to practice law. On April 25, 2005, the board's secretary granted the applicant's counsel permission to withdraw.

{¶ 12} Because the applicant declined to authorize further medical evaluation for the panel's review, the panel determined that the applicant's unconventional conduct at and after the panel hearing precluded any recommendation to approve

her fitness for admission to the Ohio bar. The board agreed, finding that it also could not recommend approval "without additional psychological evidence to demonstrate the cause of the outbursts, and assurance that [the applicant] will be able to control such outbursts, as well as information regarding whether [the applicant] has a psychological condition that could affect her ability to practice law in a competent and professional manner." The board thus determined that the applicant had failed to carry her burden to establish her current fitness to practice law through clear and convincing evidence. See Gov.Bar R. I(11)(D)(1).

{¶ 13} Upon review, we accept the board's findings and recommendation. The applicant has not filed objections to the board's report. Moreover, given the applicant's irregular behavior and correspondence, we require a more authoritative assurance that the applicant is psychologically fit to practice law than we have before us now. The application to take the bar examination is therefore disapproved. The applicant may reapply when she is better able to demonstrate the fitness necessary for admission to the practice of law in Ohio.

Judgment accordingly.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

CUPP, J., not participating.

———

Marshall & Melhorn L.L.C., and John A. Borell Jr., for relator.

Rebecca J. Bell, pro se.